Argument not to exceed 15 minutes per side Mr. Johnson you may proceed for the appellant. Good morning my name is Tim Johnson I'm here on behalf of the plaintiff appellant Margaret Boaz who's here in the courtroom with me. Your honors I requested three minutes rebuttal. Obviously this is the case it's very important to Ms. Boaz but it's also a case that's very critical with respect to the precedent that it sets particularly in with respect to the Equal Pay Act EPA and other statutes governing the protection of employees. What will be important for the court today is that what standard of view will be applied and of course FedEx will stand up here and say well this is an abusive discretion situation it's a factual issue and that it only clearly erroneous issue shall be reversed. I would take issue with that and say there's various standards reviewed to be replied not only the standard review regarding the facts but also the law which of course would be a de novo review and then of course we have mixed questions of law and fact but particularly here what I really want to emphasize is we're not talking about credibility determinations as between Ms. Boaz and FedEx's witnesses. For the purposes of this appeal I would say let's take everything that they say in conflict with each other and let's rule in favor of FedEx's witnesses. The problem here is not the determinations between Ms. Boaz and FedEx's witnesses but within FedEx's own inconsistent testimony within itself. Now the court did correctly rule and find and it was not appealed that the evidence was overwhelming that Boaz was assigned to replace her male comparator Jim Terrell and took over all of his job duties and responsibilities and also of course for less pay and therefore Margaret Boaz had in fact established a prima facie case, a prima facie violation of the EPA. Of course the burden then shifts to the employer and you have to be very careful with the nuanced wordplay in FedEx's briefs because they say oh this is just Ms. Boaz's first hurdle. No, she crossed that hurdle and then the burden of proof then shifts to the employer and unlike the one case that FedEx relied upon, the Packus Seventh Circuit decision, that decision doesn't apply in the Sixth Circuit because we have a vastly more employee friendly or employee protective interpretation. Not only does the proffered other than sex factor have to be used legitimately, has to have a legitimate business reason and it must be implemented reasonably under the circumstances. What this appeal really is all about is an indictment on FedEx and its own witnesses and its testimony and answers provided under oath and discovery. As you can see from the briefs, this is what I would call the example of the first the witness and say it's in a car wreck case and the witness comes up and says well you know I didn't see the light and then later they amend their discovery responses and say well you know what there really isn't any light at that intersection. There is no light. Only to then be told by the court yes I've found that there is a light and then they say oh well you know what I saw it it was red. That's the the trillage of how these events went through this case. When Ms. Boaz and then the problem with what happened in the trial court level is irrespective of all of these inherent inconsistencies, these conflicting testimony, conflicting answers given under oath and discovery, the problem is the court never reconciled any of these problems and more importantly it never asked or requested or demanded that FedEx explain these inconsistencies. If you'll note the most important document that I'll put before your honor is the Engelman report, its own internal investigation of one of Ms. Boaz's internal complaints and that Engelman report was actually cited by this court when this court previously heard an appeal involving Ms. Boaz's claims in which FedEx had argued that they had limited the statute of limitations. The court below granted the motion for summary judgment based on that limited statute of limitations and this court reversed saying no that that's not the proper application of law in the Sixth Circuit and then it went on to note that based on the other facts that there was there was issues of fact with respect to our own Engelman report that had indicated that Ms. Boaz had in fact taken over all of her male comparators job duties and responsibilities. Well what about the legitimate business factor that was provided by the employer as the reason for what what occurred with regard to your client? What I'm wondering about here, we've got two versions of the facts, your clients and the employers and both versions are perhaps plausible but the judge at the bench trial found against your client. What are we to do with these findings of fact which could have gone the other way but ultimately was decided against your client? What would be the basis to set that aside? And again I wouldn't say there was any dispute. Again we'll assume FedEx's facts to be the case. The question is which set of facts? The one that presented in discovery? The one that was presented in the initial phase of this case at trial? Or at the 11th hour when they're trying to overcome their heavy burden? The the legitimate business reason that the court, I'm sorry? Didn't you argue that at trial that some of the employees explanations were deficient or contradictory? And notwithstanding your arguments in that regard the court's deal? I did so ad nauseum. Again that was the problem. There was no reconciliation. There was no demand that FedEx explain these inconsistencies and these are these are not just nuanced inconsistencies. These are flat-out one can't survive the other. When you say there was no demand that FedEx explain, you're not claiming that you were cut off in your cross-examination or anything of that nature are you? No, no your honor. What I'm saying is is if you tell the court, which counsel for FedEx literally did, that the job had been eliminated and that it no longer existed. How can you then say after the court finds a crime of violation against you? Oh yeah, well we we actually re-evaluated that job. How can you be re-evaluating a job that your earlier complained that had been eliminated or had gone to other employees besides the plaintiff? One employee who wasn't even employed at the time at FedEx. But getting back to your question, because I think it's an important one, and that is what was the stated business purpose? And the court allowed, and this was a bench trial not a witness, is a little bit more freedom to present testimony. But the key thing there is that she went on and on for you know a good bit of time about how there was an overuse of the PMA 27 position. Well that didn't apply to Ms. Bowes because Ms. Bowes at no point in time in this case was ever a PMA 27. So she should never been on the PMA 27 radar. Secondly, all she sought was equal pay. She had to be paid the same thing that Terrell got. That's right, and she would have received that if she had maintained the the, I'm sorry excuse me. And what he got was paid at the at the 27 level. Correct. So you say she's not seeking to be a 27, she's seeking to be paid as a 27. Correct. She would have certainly accepted and would have wanted and So the point I was getting at is. So if she's not seeking to be a 27, then she's actually seeking to be paid as a 27 for something consider a lower, a considerably lower grade as Terrell was. Well and she was in fact awarded by management a GL 26 position. And the GL 26 position and the GL 27 position are within the same realm of a pay grade that the the the difference would have been minimal in the amount of until it was ultimately rescinded by HR. What I have trouble figuring out Mr. Johnson, so just let me lay it out for you so you can respond, is it just looking at what they said at trial, it seems to me that FedEx easily met their burden of showing that there was a reason other than sex and that there's no evidence in this record that these disparities were in fact based upon sex. That's that's the first observation that I would make. So you seem to be saying, well geez I didn't know or they didn't tell me what their defense was or they were inconsistent in in pretrial matters, almost seemingly recognizing that if you only look at what happened at trial you lose. Now my characterization is clearly going to be different than yours on that, but that's how I read what you're saying. The problem is what what do you want us to do about that? You don't even raise rule 8 in the in your pleadings. Well your honor, what I would recommend in my position would be that it wasn't just at trial. Please be mindful that at the beginning at the first phase of trial when the court did in fact find that FedEx did not in fact eliminate the job, that FedEx did not in fact give it to other employees, that in fact established she was doing the exact same. Again, classifications are another red herring. Job classifications are unreliable and they should not be trusted. It's the actual job duties that must be evaluated. What is the point here? The point is they said something one time so then there a stop so you win. I mean what I get all your complaints about the adequacy or accuracy of their testimony and their disclosures. I get that. But as Judge I was at trial and knew about that. So what's the error here that we're supposed to correct? The error here is that FedEx should be bound by their prior responses that were given under oath that were never supplemented, that never changed in the same testimony that was provided in her determination in the first phase of the case that she determined that the prime facial case had been met and not accepting completely wholly inconsistent testimony that was made up at the 11th hour. Courts have addressed the illusory post-event justifications that companies will come up with. I-Services is not illusory. Not at all. Thousands of employees lost their job, retired early, were transferred around. So to just ignore I-Services seems to be a bit... And we embrace I-Services. So basically what I think you're saying is we shouldn't allow them to rely upon that I-Services justification because they said something different earlier, basically, right? Wholly inconsistent earlier, yes. And under what authority do we do that? Is it because they didn't plead the affirmative defense? That's what you seem to be saying in some points. Now you're saying... Now you're not saying that. You're saying, well, they were just inconsistent. The I-Services reorganization, we're not saying didn't happen. Of course it happened. We're not so much sure about many people losing their jobs because as they testified, many people ended up taking the voluntary buyout. So then they were left scrambling with jobs to be filled with not enough people to fill them. And that was what I was getting back earlier. The court focused on the legitimate business reason, meaning that FedEx was looking to reduce redundancies in the workforce. And that may have applied to Ms. Walthall in her situation in HR. It had nothing to do with Ms. Bose's department and Ms. Burns. Ms. Burns desperately needed Ms. Bose to do Jim Terrell's job. And so it wasn't a reduction of workforce or redundancies of workforce. It was a one-for-one. She didn't train with anyone else and Terrell didn't train anyone else to do his job besides Ms. Bose. So it's not a redundancies workforce. It's a reassignment. He's gone. I need someone to do his job. Margaret, go do his job. Here's his beeper. And to get back to your issue, in the middle of this evaluation, this is where it becomes personal. Walthall wasn't even assigned to Ms. Bose. Yet here she is at every time that management is putting her in a position that would have been fine, would have been GL-26, would have been paid comparatively, we wouldn't be talking today. HR, Menace and Walthall come in and based on her qualifications, not based on the evaluation of the job duties, based on her qualifications, they strip her of the duty or responsibility. And here is the key. They didn't take her out of the position and put her back into the GL non-exempt position she was in. Had they done that, then they would have been following the legitimate business purpose of our services. But they left a non-exempt, which Walthall said should have never happened, left a non-exempt employee in a position doing an exempt level job for over four years. And during that time, the case law said the businesses need a legitimate period of time. But they said two years is too long. Five years is definitely too long. But they left her in that position. If they were going to remain consistent with their position, they should have taken her out of that position and replaced her with someone else who supposedly met their qualifications. I know you're red lights on, so you're out of time. But let me see if I can get you to clear up one thing. You seem to be arguing that the company's explanations for their treatment of your client were pretextual in nature, that those were not the reasons they gave were not the real reasons. But at one point, you said, well, we're not going to prove pretext, which would seem to be at odds with your argument that the reasons they gave were not the real reasons or were contradicted by the evidence. I think the court made note of the fact that there was no proof offered regarding pretext. We didn't have anyone standing up saying, yes, we do have circumstantial evidence. You have Walthall, a HR person who is not even responsible to Ms. Bowes, look at the special report to see the HR folks that are involved. It was not even her assignment. And yet here she is, sticking her nose into Ms. Bowes. Every time she's elected for a position, she comes in and restricts her of that job. So you do think you provided adequate evidence of pretext? Well, pretext gets to the point where they've sufficiently proven their heavy burden. And our position is we never get to pretext because they never meet their heavy burden. And I know I'm out of time. All right. Okay. Thank you very much. Good morning. May it please the court. My name is Kim Hodges and I represent the Appleys, in this case, Federal Express Corporation and FedEx Customer Information Services. This court should affirm the decision of the Western District of Tennessee entering judgment in FedEx's favor because after a full bench trial and an opportunity to weigh the credibility of all of the witnesses in proof, Judge Diane Vescovo correctly found that FedEx's iService reorganization met the requirements of the factor other than sex defense under the Equal Pay Act. Essentially, Mr. Johnson is saying that she was in error in finding that because your witnesses said other inconsistent things earlier in the case and they should be bound by that. So what do you say to that? Were they inconsistent, number one, and even if they were, should you be bound? They were not inconsistent, Your Honor. I'll jump back to that in just a minute to explain it. But more importantly, Ms. Bose is not challenging any discovery motion, any ruling on a discovery motion. She made no challenge to the entry of any evidence at trial. There was no motion to exclude, no motion to strike. There was no ruling at trial that she's challenging today and can no longer do so. Now, specific to whether or not there were inconsistencies, there again, Ms. Bose is misrepresenting the record. The first one that she points to is an amended interrogatory response in which FedEx amended an interrogatory response that was specifically directed to the question of who assumed the duties that Mr. Terrell left behind. FedEx had originally responded with the identity of two employees who we believed had taken over parts of the duties and found out that we were incorrect. And so under our obligations under the federal rules, we amended our response to say that it appeared that some of the duties Ms. Bose took over, those that were related to the print vendor function, and that the remainder of his duties went away. That was FedEx's position consistently all through trial. We lost on that point. That's how Ms. Bose was able to state a prima facie case to begin with. So Judge Vescovo's claim that Ms. Bose assumed Terrell's duties, whatever they were at the time that he left, got her a prima facie case, but that's all that that gets her. The remainder of Ms. Bose's challenges to so-called inconsistencies have to do with statements that FedEx, not statements that FedEx made in, for example, an EEOC position statement or in deposition responses, but merely to the answers to discuss the full contours of the I-Service reorganization. He's not pointing to any specific response or any specific statement that's incorrect or that was truly inconsistent. The argument is simply that we had a full opportunity to say more and didn't. The bottom line is the witnesses were never asked. And when we're talking about an EEOC position statement, obviously the defense is under a Title VII claim and an EPA claim are different. FedEx is not as though I-Service was never discussed, but the full contours of the reorganization were not discussed. But more importantly, all of this came out in trial. Ms. Bose's attorney could and did cross-examine witnesses on all of these so-called inconsistencies and had a full opportunity to present the inconsistencies at trial. Judge Vescovo heard them, considered them, and made a credibility determination. That's what we're here on today, is simply a disagreement with a credibility determination that a trial judge made. Let me ask you this. How does the finder of the fact give credence to your client's theory of the case when you look at the fact that the plaintiff was maintained in Mr. Terrell's job for years on end and during that time apparently received favorable employment reviews and was recommended for promotions and pay increases and all of that sort of thing? And one wouldn't think a reorganization would go on for years and years, or if it did go on for years and years, some explanation or some basis would be reflected in the company policies and such, and the record of the trial doesn't seem to indicate much in the way of documentary evidence as to the policies and procedures in terms of the reorganization. Most of that seems to be based on testimony of the company's employees, but one would think that there'd be written policies that would have been introduced that would pertain to that. I know that's more than a single question. I can address it generally, and obviously feel free to interrupt me if I'm not getting to what you need. The court did make findings. Let me address first of all the point that Ms. Bowes is making, that she was left in a position for years and years, because that's simply not correct. Ms. Bowes assumed the duties from Jim Terrell in late January, early February 2004. By December of 2004, she landed in what FedEx considered a placeholder position of a grade 25 level position, so that while the compensation department was working out its analysis of the entire organization and the review of the different positions. It's important to note that iService started in 2003, but what was going on in 2004 through mid-2005 was in the weeds work that the compensation department, Janice Avery Walthall specifically spoke to this at trial, because she was directly involved, that the compensation department had to do to review what was left after 3,600 people left the company. This was a reduction in force, so after that new departments were created, people were shuffled around, and the compensation department had to look at, when I say organization, I mean the entire customer service organization as a whole, to see whether the positions that were left, or rather the duties that were left, were properly classified in the right position. This happened at an organizational level, and then in a deeper dive level at department by department. The compensation group started looking at Ms. Bowes in particular in June of 2004, so just a few months after she first took over those duties, because she was applying for other positions that she wasn't qualified for. There were conversations back and forth between Ms. Bowes, excuse me, Janice Avery Walthall, and Ms. Burns, Ms. Bowes' direct manager, about what duties she was taking over, and whether that would fit the grade 27 position. As we've explained in our brief, it's important to note that the grade 27 position was specifically on everyone's radar, because there'd been a determination made that it was being overutilized. During this whole period, she kept doing the same job that Terrell was doing at a 27, right? She did, Your Honor, yes. So even though she's applying for other things, and they're trying to figure out what to do with the job, and what to do with her, she's still doing the same work. That's correct, Your Honor. So the only way, it seems to me, that under iServices you can justify not paying her what he was getting, is if somewhere along the way, presumably on a timely basis, you made the determination that what he was doing, and what he was being paid, was not worth it, and you're not, and you're no longer going to pay somebody at a 27, regardless of their sex, for doing what he was doing. Is that what happened here, or not? Yes, and in the reverse direction, Your Honor. FedEx never specifically reviewed Jim Terrell's duties. There wasn't any need to. This was happening all over the company, but that's what iService was addressing, was the fact that we had redundancies in the staffing. Some people were, frankly, overpaid. It's entirely possible that Jim Terrell was overpaid, and we're allowed to correct that. Well, let me put it another way. You have to be saying, then, that there was an evaluation of what she was doing, and it wasn't worth a 27 position. Correct, Your Honor. At what point during the four years did that happen? It happened on a continual basis, beginning in June of 2004. Judge Vescovo addresses this on page 66 of her order. The conversations began between Janice Avery-Walthaw and Denise Burns over whether the duties that Ms. Bowes was performing met a grade 27 position. It was again addressed in December of 2004. This is after Ms. Bowes had applied for several jobs, and there'd been some analysis done of whether she even met qualifications for lower graded positions. In December of 2005, the compensation group, through Janice Avery-Walthaw, made the decision that it was best to put her in a grade 25 position as a placeholder until the compensation group got to Ms. Burns' department to specifically review, not just Ms. Bowes, but every individual in that department to make sure they were properly classified. When she's put in that placeholder position and then later determined she didn't qualify for it, was she paid at that level? At which level, Your Honor? I'm sorry. At a 25, yes, and she retained that pay even though she wasn't paid at 7 all through this four years. No, Your Honor, not at all, not at all. That is a misrepresentation that Ms. Bowes makes in her brief to the court. It wasn't a continual grade 7 from is that this reclassification occurred in either December of 2004 or at the latest May of 2005. Right. Do you agree with that? I do, and May of 2005 is when she was placed. The final analysis had been completed, and she was placed in the 23. So your position is that even if this reclassification dragged on longer than it should, it was only for about, at a maximum, a year, and I assume then you would argue that's reasonable under a case like this. Correct, Your Honor, at a maximum of a year and actually somewhat less than that, but Judge Vescovo made the finding that whatever was going on prior to December 2005, excuse me, 2004, was rectified by that time because she was placed in the grade 25 position then. She was specifically making a note that the statute of limitations for an Equal Pay Act claim is not going to allow Ms. Bowes to reach back to all of the decisions made in 2004. It only allows her to reach back to April 17, 2006, and by that time, she'd been placed in the pay of a grade 25 even though she was later moved to a grade 23. She retained the same salary. So then at best, you would argue that the difference we're talking about here is the grade 25 pay she was receiving at that point and the grade 27 pay Terrell was receiving when he was doing whatever he was doing. The difference, yes, Your Honor. That's the difference in the pay that we're... I'm not sure if I understood you correctly. Did I understand you to say that the explanation that she was in the position that she, Mr. Terrell's position that she was in that position for less than the... The reason she was in the position was not for the entire four years based upon the reorganization, but the reorganization was responsible for her being in that position for a lesser period of that time. Did I understand you to say a year, a year, a year more, a year and a half? If we're understanding each other, Your Honor, then yes. Let me just restate it to make sure we're on the same page. That means that the reason she was in that position longer than that was based upon other reasons. No, Your Honor. It was based on the continuing... This was phase three of iService, which is the part where the compensation group went in to the customer service organization and to Denise specifically to go position by position and make sure that the duties that were being actually performed were properly classified. It was a scaling down from 2003 to early 2005. So it's not correct to say that the position she ultimately ended up in in 2005 was not a part of iService. It was. It was the tail end of it and it was the final analysis that the compensation group was doing to make sure that we finally had everybody classified. But earlier than that, in 2004, she had been put in a placeholder position. She wasn't making grade seven money for years, as she says in the brief. She was placed by no later than December of 2004. She was placed in the grade 25 position and had already started making grade 25 money. I hope that answers your question. Clarifying question that puzzled me a little bit. I understand that the 23, the 25, the 26, 27 are all on a scale. The seven seems sort of extremely different. It's a non-exempt position. Is that a different scale? It's a non-exempt scale, Your Honor. The grade 23, 25, 26, and 27 are exempt level positions. The big distinction between the grade 27 and the 23, 25, 26, the big distinction is that that is on track with a management level position. It's a special position that was only ever intended to be used for particular circumstances. Janice Avery-Walthall testified to that at trial under direct examination. I guess what I'm asking is if the seven is on a non-exempt scale and all those mid-20s numbers are on an exempt scale, is it some sort of continuous scale or are these just different? What's the range of some of these scales, I guess, is what I'm asking. Do you mean the pay range? No, the range seven is higher than six and lower than nine. How high does it go? Can you be a non-exempt 27? No, no, Your Honor. It's a career progression. You could have said she was an A or a B. That would make it clear that you were talking about a completely different scale, but this is a scale where, I don't know, what kind of numbers are we talking here? I see I'm out of time. The grade 23, 25 and so forth are in what's called a career progression, meaning that I might be a grade 23 position and then take on more duties and can be promoted up to a grade 25. There is a difference in pay. There are different pay bands for each of the grade levels. Grade 7 is on a different path because those are non-exempt positions. The exempt level positions go from, I'm guessing, I think it's about level 18 up through 27. The non-exempt positions, I'm honestly not sure how many rankings of non-exempt there are, but the GL 7 is on a different path. If you went from exempt to non-exempt, you would have a radical shift in the number because it's a different kind of scale, or is that wrong? In the position number or in? Yeah, the number. We're just looking at 7 and 23. It makes it sound like her salary was slashed. No, she was... Or it could be that she was just in a different scale. She was in a different pay band. She did receive an increase in pay when she moved to the exempt level positions at the grade 25 and 23 positions. There are different pay bands for each numbered position. Exempt and non-exempt is overtime, no overtime, right? Correct, Your Honor. Just out of curiosity, do you know what was she making in her non-exempt position with what overtime she was making, which she was working, compared to the 25 that she went into? It sounds like there's a huge differential because of the number 25 and the number 7, but what are we talking about here? Do you know? That's my question. I think it was roughly... This is in the trial record, and so I hate to guess, but I think it was roughly a $20,000 annual difference. Is that in the base pay or is that... Base pay. That include... She said she was doing exactly the same job, exempt and non-exempt. So if she's working 60 hours a week in the exempt position, she's not getting any overtime. But if she's working 60 hours in the non-exempt, she's getting 40 hours base pay plus 20 hours of overtime, right? Correct. But she says she's doing the same job, so presumably she was spending the same amount of time both times. So if you add back, if she earned overtime in her non-exempt position, if you add that back in, what was the difference between what she was paid and what she says she should have been paid? Do you know? I don't know the answer to that, Your Honor, but conceptually you're correct. If she had been paid at the grade 7 and was making overtime, then yes, she could potentially have met the same salary that she was making as a grade 25. Is that in the record? There must be someplace we'd see in the record what dollar she actually claimed she was entitled to. Yes, what dollar she was actually making, yes, Your Honor. I don't know that anyone at trial made a specific comparison of the overtime plus base hours. Didn't the plaintiff at some point say what she wanted? The dollar amount she wanted? Yes, Your Honor. I'm sorry, I may be conflating. There were more claims at trial than we have here. She had a misclassification claim as well and was claiming overtime there. I'm sorry, I don't know the exact answer to that. Thank you. It's a very interesting question you just raised. The reason partly why there weren't specific numbers was because we had agreed to bifurcate the trial. The experts that we have, which is what we're asking the court to do, is to remand for the determination of damages, was reserved until the liability portion of the trial was resolved. That's why specific numbers weren't used. It's interesting to note, though- When we're looking at the question of how long is reasonable to keep somebody in their old pay when maybe they're entitled to new pay, would the pay differential be a factor that would be taken into account in terms of how reasonable that time period is? Absolutely. I was going to get to the pay differential. In this case, if she was working overtime and therefore there's a $500 differential, kind of hard to say that six months, nine months, 12 months is unreasonable over $500, but maybe the answer would be different if it was $20,000 or $25,000. It was $20,000 or $25,000 because she was not getting paid overtime. Even though she was carrying the beeper and earning overtime pay, she was not getting paid overtime. That was part of our other FLSA claim. Back when she was a seven, she was? When she was a seven. The problem is- What happened to that claim? The court basically ruled that the statute of limitations, if there's willfulness, it goes back three years, non-willfulness, two years. By the time the claim had been filed after she had gone through her internal administrative remedies and filed the lawsuit, there was no real time, meaningful time upon which to claim the lack of overtime. There was a finding that FedEx did in fact owe her 11 hours. It still remains unpaid. To get to the point, the discrepancy, and I want to make sure I was clear, she remained in the Terrell job for four years. There's no doubt about that. What I was saying is, it's the first year, whatever, was as a GL, non-exempt seven, and then ultimately she was either a 23 or 25, but under either scenario, she was woefully underpaid. It's not the first year, it's the first six months on one alternative that the magistrate judge found. At best, it's one year. Yes. Then she went up to 25 and she was paid at that rate, whether she was a 25 or not, for the remainder of the period. But still vastly lower than Terrell's pay when he was there. They clearly made the determination by that point that whatever she was doing, forget merit a 25 pay, a 27 pay, regardless of what Terrell might have been paid. That's the nuanced distinction that is lost on the lower court. The lower court accepted that they had reviewed the job duties when in fact all they were doing were evaluating her qualifications. While they deemed her unqualified for the job, they nevertheless left it in it. That's what gets back to Menis, who was actually responsible for HR. She testified, testified truthfully. What happened in June when she got the 26 and Menis rescinded it? She should have been removed from the job. She should have gone back to the GL seven duties that she was performing. But she didn't. They left her in that position to perform. How can you complain about that? Going back to the GL seven job she was performing, you adamantly maintained, was the 27 position duties that Terrell was doing. She's actually getting paid more than, she was benefited by staying in the 25 rather than what you're now saying she should have been by shuffling her back to the non-exempt seven. She would not have been doing Terrell's duties. She would have gone back to doing her GL seven responsibilities. I take her back out of that entirely. Out of that whole entire role. But management wouldn't have any part of that. Management wants her and left her specifically and intentionally left her in Terrell's position. One, because she was doing a great job. All of which assumes that the job classifications and duties and pay continued the same throughout this four year period during which this iServices reorganization is going on, right? Right. And the magistrate judge, correctly or incorrectly, found that's not true. Found what part not to be true? The magistrate judge ruled against you on that. Heard all the evidence, ruled against you. And the only error you pointed out was, well, geez, they should be bound by other things they said in discovery. That's sort of how I see this. Well, and again, but the court finds, I'll just leave you with one note because I know I'm out of time. The court based its determination based on these numerous communications between Burns and Walthall. Of course, it's interesting that this May that was just referenced, May of 2005, was the seminal point in time when the 25 was determined. Her boss, Tom Alady, is over there working on a special assignment with Burns to give her credit for the position but has nothing to do with what Walthall's doing. He's not even her assigned HR representative. And the most important thing I can leave you with, Your Honor, is there was absolutely no paper trail whatsoever. No inter-office memorandums regarding not only our services but the supposed evaluation of the Terrell position or Margaret Bowe's responsibilities. No emails, no correspondence, no calendar or outlook appointments. Not one single shred document was produced evidencing anything that they said. What was produced, and I'll ask Your Honors to go back and review it, was the Engleman report. And the Engleman report came out in 2009 and made it clear that she had taken over Terrell's job duties and that she was working out of a consistent pay position and that the problem in this case was a lack of communication between Burns and Walthall. And notwithstanding that report in 2009, in 2010, and all through discovery and trial before the court rules in the Professor's case, FedEx knowingly provides willfully false, completely conflicting testimony that, again, why would we be questioning about whether or not they're performing an evaluation of a job which they just testified to had been eliminated or had gone to other people? Thank you for your time, Your Honor. Just out of curiosity, is your client still with the company? Actually, Your Honor, yes. All right. Okay. Okay. Thank you very much. Thank you. The case is submitted. And the clerk, once the table is clear, may call the next case.